GWATHMEY )
v. ) APPEAL.
STUMP )

WHITESIDE AND COOKE, for the appellant,

TRIMBLE, for the appellee,

OVERTON, J. delivered the following opinion of the court:—

This was an action of covenant.

The declaration states that the appellant fraudulently obtained possession of the deed, so that profert cannot be made. A special demurrer was filed for want of pro-

fert, which was overruled. The only question in this court is as to the correctness of the opinion overruling the demurrer.

*(1)* It is admitted in argument that it has never been decided in this state that an action at law can be supported on a lost bond, and therefore the question is now open for decision. On the part of the appellant it is insisted that the action cannot be maintained, there being no precedent of such a case previously to the case of *Reed* v. *Brookman* in 3 T. R. 151, for which the following authorities have been cited and relied upon. Co. Lit. 35b —255a—5 Co. 74-10. Co. 92, 2 Str. 1185, and the MSS. case of *Helm* v. *Eastland* in the court of appeals of Kentucky. The court of chancery, it is said, has uniformly considered the subject in this light. 2 Atk. 61, 1 Atk. 345, 1. Vis. 345, 393.

This argument has been met by showing many cases where actions have been sustained on cost bonds, since that of Reed v. Brookman, as 1. H. Bl. 255, 1. Wash. 241.

*(2)* In the English books a great variety of cases exist on the subject of profert. The general rule is to be found in Weymarks' Leyfields, and Bellamy's cases in Coke's Reports. It will be found to be, that in all actions a man who claims by deed; and pleads it if he be a party to the deed he must make profert, and where the deed is not the foundation of the claim may either plead it, or not. The law however required profert in all cases, where the claim cannot arise except by deed, as in things which lie entirely in grant. Nearly all the cases in the books are founded in this idea. Upon examining the cases to be found in Viners Abridgment Tit. Facts, and Com. Dig. Tit. Pleader, no precedent is perceived where a plaintiff has bottomed his claim on a deed, and profert, has been dispensed with. *(3)* There are many cases, where on the

97

part of the defense, and in replying it has been dispensed with, on the ground of fraud or necessity. For a more perfect view of these exceptions to the general rule of law, as well as a knowledge of the time of their origin, we refer to Viners Abr., tit Facts, Ma, & p. 66, Ma, 671, Ma, 7, Ma 8, Ma 9, Ma 10, Ma 11, from pa, 73 to 78, and Com. Dig. tit pleader O. 8 & C, and Lord Coke, who must be admitted to have possessed as strong a wish to extend the powers of a court of law; in derogation of Chancery powers, as any judge, has specified but three cases in which profert may be dispensed with. In case of some great public calamity, as fire; the fraud of the other party as where he has the deed, and will not produce it, or has caused its destruction; and where the deed is in another court. (4) The great and important principles of the court of chancery, is necessary to the preservation of law in a free country, were unknown in the time of Coke. The exercise of necessary powers met with this decided and strenuous opposition, and it will always be kept in mind, that the jurisdiction of chancery, was then in its infancy. Its superiority to courts of law, in adapting its modes of redress in civil cases, to the varied actions of men, was then unknown; nor in fact had any efforts been made to ascertain the limits of its jurisdiction, narrow as it was. We have not a vestage of a decision in Chancery previous to the time of Charles 2nd. It was courts of common law that anciently did all the business, and it was in advancement of the jurisdiction and improvement of those courts, that inspired the sturdy and capacious mind of Lord Coke, employed. All his reported cases, and references to other reports, respected cases decided at law. In his time, and particularly with his disposition, if a man could not obtain remedy at law, he must generally go without it—though there was

not wanting a disposition to make the modes of redress at common law, adequate to the emergencies of society. Yet so confined was those courts in their method of proceeding, as to be incapable of administering substantial justice, in many cases; this generated a disposition in the nation, to enlarge the chancery powers, to administer justice where the modes of redress at law were incompetent to afford it. As commerce extended and civilization progressed, the necessity and convenience of the exercise of chancery powers increased; until we see at this day a court of equity exercising undisputed jurisdiction, not only as an auxiliary in the cause of justice agreeably to its original character, but exercising concurrent jurisdiction, with courts of law, in relation to many of its important branches, where the modes of legal redress have been found to be embarrassed, doubtful, or inadequate. It was when mankind knew of a court of law only, as a place of administering justice, that those courts dispensed with profert, lest there might be a defect of justice. For the wisest purposes, it was always conceived a matter of substance, and after the establishment of the general principal, it was with evident reluctance, that courts of common law admitted of any exception, as may be seen from Dr. Leyfield's case, and the summary of cases in Viner's Abridgement, nearly all of which were antecedent, to, and contemporary with the period of Lord Coke's Reports. It was only in cases of some public or notorious calamity, as fire, rebellion, or thieves; and the fraud or obstinacy of the opposite party in detaining or destroying the deed, that the law dispensed with profert. (c) Had there been a court of chancery at that time in the exercise of powers, such as we now see, unattended by the aversion against it, manifested by Lord Coke, no such exceptions as these could have arisen. As the parties

would have a more safe, convenient, and less embarrassed mode of redress in equity, we never should have heard of the necessity of the case, as giving rise to exceptions to the general principles.

The fewer exceptions to general rules the less embarrassed the law is. In the nature of things we rarely expect to see a rule without an exception; but when it can be attained, it is far better for the happenings of mankind. As exceptions multiply law becomes more doubtful and obscure. Simplicity in legal science is what distinguishes its superiority in all ages and countries. It is with this view the subject will be more particularly examined; to see if consistent with acknowledged principles, the proper rule in this country, be not found clothed with this simplicity of character.

Notwithstanding these exceptions are laid down by Lord Coke, we find no instance of profert being disposed with in the manner contended for in the principal case. Even the case of *Reed* v. *Brookman* (d) does not come up to this case. There it made part of the defense, and not the ground of action as in this case; and there surely is, a wide difference in the operation of the new principle when this dispensing with profert is on the part of the plaintiff and on the part of the defendant (e). Lord Hardwicke observes in *Whitfield* v. *Faupet* (f) "You may drive the defendant to very disadvantageous issues by this method." The inconveniences are stated clearly in Leyfield's case (1) If in England inconveniences were to arise from permitting the plaintiff to declare without profert; how much harder must the defendants case be here; deprived of oyer; he verily believes he never did give such a covenant as that stated in the plaintiff's declaration yet he knows he executed one which in most parts agreed with the one referred to. If he deny it, it

must be on oath, for the plea of *non est factum* must here be put in on oath. A conscientious man, who values his reputation, would be fearful of risking the plea, not knowing how parol proof may make the case, though he knows that he never did make such a covenant. Reverse the case and send the plaintiff to equity for redress; then, the rules of practice require him to annex an affidavit to his bill, of the loss of the bond as stated therein. The defendant denies his answer, the *onus probandi* lies on the plaintiff. At law on the plea of *non est factum* the *onus probandi,* though on the plaintiff the defendant is placed under truly disadvantageous circumstances, to use the phraseology of Lord Hardwicke.

It is repugnant to all ideas of justice and long acknowledged principles that this should be the case. In most cases the loss of the bond is occasioned by the carelessness or negligence of those who have possession of them. Whatever inconvenience thence arises, surely should not be placed on the shoulders of the obligor, against whom no imputation can be made. By allowing a party, who makes a lost bond the ground of his action, to declare without profert, the *onus probandi* is almost is almost necessarily thrown on the defendant. The general issue must be on oath, which the defendant would be afraid to venture, and any special plea must confess and avoid.

The case of Reed and Brookman, on which the argument of the defendants counsel is founded, seems to have originated from an improper application of the doctrine of legal presumptions.

One of the exceptions to the general rule noticed in Weymark's case 5 Co. 74, is the only one which is supported by correct principles, "where a deed has been pleaded in some other court, where it remains and may be resorted to."

This is admitted, because it does not fall within the scope of reasoning, opposed to the new principle established in Brookman's case. In the excepted case, access can be had to the deed in another court, though profert be dispensed with.

All the cases in the book must arise out of interests of some one or other of the following classes.

1. From deeds communicating corporeal estates of freehold, and since the statute of frauds and perjuries, those of less dignity.

2. Similar incorporeal estates, which lie in grant, agreeably to the principles of the common law.

3. Deeds communicating rights, which lies in action.

4. Deeds operating as an extinguished release and considerating the structure of the common law, cases under the first class could but seldom arise, and estates of inferior dignity might pass by livery, without deed, consequently, though there might be a deed; the party was not bound to plead it. 13 Vin. Abr. 76, so that the thing to which the deed relates, has been executed. It is from cases arising out of the second and fourth classes we must look for precedents; principally however arising from the second. The reasoning in Brookman's case is referrible to two principles, first, length of time creating a presumption of law and secondly, to accident. (5) As the main force of reasoning is derived from presumption, a succinct history of this part of the law, may not be improper. A careful observation of the changes it has underwent may throw some light on the subject. Its principle formed part of the common law. The first impression was, that after forty years of uninterrupted enjoyment of property lying in grant, a deed or grant would be presumed, though none could be produced 1 Vin. Abr. Afterwards thirty years were considered sufficient to

create a presumption, of the former existence of a grant or deed 1 Bay 364.

From the earliest accounts we have of the decisions of the courts, on common law, principles, presumptions of nonexisting grants and deeds have obtained, as recognized in Beadle v. Beard 12 Co. 5 when the court said "it would intend in respect of the ancient and continued possession, that there was a lawful grant of the king; for records and letters patent and other writings either consume, or are lost, or embezzled; and God forbid, that ancient grants, and acts, should be drawn in question, which were at first necessary to the perfection of the things, although they cannot be shown."

In the various decisions which have taken place since that time, until of late, the courts appear to have avoided laying down any precise rule on the subject. They adjusted the cases before them sometimes giving an opinion that fifty, forty, or thirty years were sufficient length of time to create a presumption of a nonexisting grant or deed. At length in the case of Darwin v. Upton 3 T. R. 159 twenty years were adjudged sufficient. This was the possession of ancient lights. But in 11. East, 284, 491, twenty years was esteemed a sufficient lapse of time to presume against from the crown, and in the same book page 376, six years enjoyment of a highway created a legal presumption of a grant—from the owner of the soil. By recurring to a regular series of cases from the time of Lord Coke, we perceive a disposition in the courts to narrow the time, after which this presumption should arise proceeding by analogy to the statutory provisions respecting limitations commencing first by reference to the limitation in droitural actions, agreeable to the 32 H 8 C, 2. and 212 1-C-16, and thence by an easy progress, the limitation of possessory actions, agreeable to the lat-

ter statute was adopted as the rule of presumption, thus accommodating the principles of law, to the progressive state of mankind. This is the natural course of things for as men advance in commerce and wealth, their civil rights are multiplied; the acquisition of property, sought after, and pursued with more activity. Then it is, that prescriptions and presumptions must be resorted to, for the peace, order, and happiness of society; and hence we perceive the gradual extension of these principles. In relation to statutory regulations, coming nearer to our own time, we find this legal presumption, on which limitation is founded, narrows the time still more. As against the state, where by the principles of the common law, no time runs, twenty years were prescribed as a proper time for the creation of this presumption in case of a grant for land; which is the strongest instance of a presumption 3 T. R. 158. As against an individual, seven years gives rise to the presumption of a deed for real property, and three years in most cases, respecting personal demands Acts 1715, Ch. 27. This however is to be understood in reference to the latest decisions, from which it appears that presumption are bottomed on the policy of statutory limitations 11 East 284, 491, 376, 2 Vin. 340-2; 3 P. Wms. 288, and not as giving any decisive opinion on the question of its application here. Thus is a material distinction between relying on a presumption of a grant or deed in evidence, under the general issue and in pleading. In the first it is a single fact whether a right once passed by deed, in the latter, the substance, terms and particulars of the deed are set out, or ought to be stated, so that the court may judge of its meaning for the construction of all deeds, is matter of law for the court to judge of, and not the jury. By dispensing with profert, matter of law, which inclusively belongs to

104

the courts, must be left to the jury; a circumstance which seemed to have escaped the attention of a majority of the judges in Brookman's case. The doctrine of presuming a nonexisting grant, after a length of time, upon which nearly all the reasoning of Ashurst and Buller depends, is admitted by Coke as well as other writers since his time; at the same time, it is laid down, that when it becomes necessary to found a claim on a deed in pleading, profert cannot be dispensed with so that the court may judge of it.

The other argument by the court, is that case is accident; and Coke's opinion in Leyfield's case respecting necessity from the loss of deeds; or detention by the opposite party is the foundation of the opinion of the court as to this branch of the subject. The dearth of precedent, on this ground, with the uniform practice to recur to equity for relief, in such cases, down to the time of Brookman's case demonstrates the unsoundness of this ground. The point was not necessary to be determined in Leyfields' case, and it is evident that Lord Coke's opinion in this respect, arose from the hardships of the case, and a desire that a party should not be without remedy. Taking the whole of the case, and the inconveniences he depicts from dispensing with profert, this is evident. But at this day by application to a court of equity, to establish a lost deed, all these inconveniences are avoided, and the general principle suffered to operate unembarrassed with exceptions. In the case of Handy v. Stephenson 10 East 55, herein the court does not expressly overrule Brookman's case, the reasoning employed completely overthrows it, and establishes the doctrine of Mr. Justice Grove in that case. The substance of the case in 10 East is, "that where in excuse of profert, it was averred that the deed was destroyed by accident

105

and length of time, and therefore, could not be brought into court and that the date thereof and the particular parties thereto were for that reason unknown this mode of pleading was held to be bad.'' It was the benefits arising from legal presumptions which seemed to have principally governed Ashurst and Buller in Brookman's case, as well as the apparent inconsistency of allowing matters to be given in evidence to a jury, and not permitting the same matter to be averred in pleading if necessary. In creating a new principle in Brookman's case, it ought not to have been forgotten, that another was destroyed, by which a matter that properly belonged to the court was transferred to the jury, thereby endangering the certainty in which the law delights, and placing the defendant in embarrassing circumstances, from which he could not extricate himself. Beside in this way of pleading, a plaintiff who might wish to get an advantage of an obligor, would conceal or destroy the obligation, and allege in his declaration, it was lost by time and accident, and such variation in its terms, suitable to himself, as he could find the frail memory of a witness disposed to support. All these difficulties would be avoided by recurrence to a court of equity to establish, or set up a lost deed.

The ancient doctrine of granting imparlances until the opposite party produce the deed a counterpart or copy, does not fall within the scope of this reasoning, and therefore no opinion is given on questions of that kind.

It is only to cases where it becomes necessary to found a claim in pleading, on a nonexisting deed, or one not in the possession of the party wishing to avail himself of it, that this opinion applies. This leaves the doctrine of legal presumptions, so necessary to the happiness of society, untouched. As in the time of Lord Coke it might

be relied on in evidence on the general issue, and, so it is by the court in this case.

Upon a full view of the whole ground, it appears, that the opinion of Mr. Justice Grove, in Brookman's case, is the correct one; and that the doctrine laid down by Lord Hardwicke in *Whitfield* v. *Faupet* must obtain "that wherever a plaintiff at law, intends to found an action on a deed, he must make profert."

The judgment therefore must be reversed.